Marc L. Antonecchia
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200
marc.antonecchia@hklaw.com

Jeremy Sternberg (*pro hac vice to be submitted*)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
jeremy.sternberg@hklaw.com

*Attorneys for Movant Glenn Weber*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In the Matter of the Application of GLENN WEBER, | 17 Misc. _____ |
| Movant, | |
| FOR AN ORDER TO QUASH A SUBPOENA in the Southern District of New York, in a case pending in the Northern District of Texas. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOVANT'S MOTION TO QUASH SUBPOENA

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND..................................................................................................2

      A.      The *Highpoint* Litigation ...........................................................................2

      A.      The *Wood Delaware* Litigation ................................................................4

      A.      The Non-Party Subpoena Directed to Weber in the *Highpoint* Litigation .............5

ARGUMENT ..........................................................................................................................6

I.       THE COURT MUST QUASH THE SUBPOENA ...........................................6

      A.      The Subpoena Subjects Weber to Undue Burden and Was Served For an Improper Purpose.................................................................6

      B.      Wood Failed to Comply With Rule 45's Requirement To Tender Witness Fees ...................................................................................9

CONCLUSION.......................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bristol Heights Associates, LLC. v. Chicago Title Ins. Co.*,
   No. 3:12cv01658, 2013 WL 1342288 (D. Conn. Apr. 2, 2013) ............................................10

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
   197 F.R.D. 250 (S.D.N.Y. 2000) ......................................................................................10

*Manolis v. Brecher*,
   No. 11 Civ. 2750, 2013 WL 4044808 (S.D.N.Y. Aug. 9, 2013) ..............................................7

*Nicholas v. Poughkeepsie Savings Bank*,
   No. 90 Civ. 1609, 1991 WL 113279 (S.D.N.Y. June 14, 1991)...............................................7

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
   No. 03-CV-1382, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ...........................................7

*Salvatorie Studios, International v. Mako's, Inc.*,
   No. 01 Civ. 4430, 2001 WL 913945 (S.D.N.Y. Aug. 14, 2001) ..............................................7

*Sanofi-Sythelabo v. Aptoex Inc.*,
   No. 02 Civ. 2255, 2009 WL 5247497 (S.D.N.Y. Dec. 30, 2009)............................................6

**Statutes**

Fed. R. Civ. P. 26(b)(1).....................................................................................................6, 7

Fed. R. Civ. P. 26(b)(2)(C) ..................................................................................................7

Fed. R. Civ. P. 26(c) ...........................................................................................................7

Fed. R. Civ. P. 45(b)(1).......................................................................................................9

Fed. R. Civ. P. 45(d)(3)(A)(iv) ............................................................................................6

## PRELIMINARY STATEMENT

Petitioner Glenn Weber respectfully submits this memorandum of law in support of his motion to quash a subpoena dated August 25, 2017 and served on August 30, 2017 (the "Subpoena")[1] in a litigation styled *Highpoint Risk Services LLC, et al. v. Companion Property and Casualty Insurance Company, et al.*, Civil Action No. 3:14-cv-3398-L in the United States District Court for the Northern District of Texas, Dallas Division (the "*Highpoint* Litigation").

The Subpoena was issued by Charles David Wood, Jr., a third-party defendant in the *Highpoint* Litigation, for the wholly improper purpose of seeking premature discovery in an unrelated litigation styled *Charles David Wood, Jr., et al. v. U.S. Bank National Association, et al.*, Case No. 2017-0034-JTL in the Court of Chancery of the State of Delaware (the "*Wood Delaware* Litigation"), in which Wood is a plaintiff and Weber is one of twenty three defendants.  Presently *sub judice* in the Delaware court is Weber's motion to dismiss Wood's First Amended Complaint.

The Subpoena in the *Highpoint* Litigation improperly seeks to compel non-party Weber's appearance at deposition and production of documents on September 12, 2017 in New York, New York.  Wood's prior statements and admissions concerning the narrow issues in dispute in the *Highpoint* Litigation confirm that the testimony and documents sought through the Subpoena is nothing more than an unwarranted fishing expedition to bolster his insufficient claims against Weber in the *Wood Delaware* Litigation.  This Court is bound by the mandate of Federal Rule of Civil Procedure 45, which requires that the "court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."

---

[1] The Subpoena is annexed as Exhibit 1 to the Declaration of Jeremy Sternberg dated September 11, 2017.  Mr. Sternberg is counsel to Weber in his capacity as a non-party in the *Highpoint* Litigation and as a defendant in the *Wood* Litigation.

## FACTUAL BACKGROUND

**A.      The *Highpoint* Litigation**

On September 19, 2014, the original complaint filed in the 134th Judicial District Court,

Dallas County, Texas was removed to the United States District Court for the Northern District

of Texas. (*Highpoint* Doc. 1).[2]  Plaintiff thereafter filed an Amended Complaint (*Highpoint* Doc.

33), pursuant to which defendants ultimately filed a First Amended Answer containing Third-

Party Claims against Wood and others (*Highpoint* Doc. 50).  On April 15, 2016, Woods filed an

answer to the Third-Party Claims (*Highpoint* Doc. 67).

According to motion papers filed by Wood, the gravamen of the *Highpoint* Litigation is

very limited:

> This case concerns the parties' rights and obligations with respect to certain
> workers' compensation insurance policies issued by or on behalf of Companion in
> connection with an insurance agency relationship that ended in 2013. Companion
> appointed Highpoint to serve as its insurance agent with respect to certain
> workers' compensation insurance policies, and it authorized Aspen to pay claims
> arising thereunder. In their complaint, Highpoint and Aspen seek to recover
> damages for funds advanced and paid on behalf of Companion in 2013 with
> respect to certain "pay-as-you-go" or "PayGo" workers' compensation policies
> issued to third-parties on Companion paper. *By way of counterclaims and third-
> party claims, Companion seeks to recover damages with respect to alleged
> premium or collateral collected by or on behalf of Highpoint with respect to
> certain PayGo policies. Companion has also asserted claims with respect to other
> workers' compensation insurance policies issued between 2005 and 2013 under a
> separate program to AMS, Breckenridge, and AMS II, which are professional
> staffing companies that are directly or indirectly owned by Wood.*

(*Highpoint* Doc. 109, pp. 1-2, at Sternberg Decl., Exh. 3) (emphasis added).  Weber is not

aware that he is referenced in any pleading or motion paper in the *Highpoint* litigation.

---

[2] *"Highpoint* Doc. __" refers to the docket entries in the *Highpoint* Litigation that are available
on PACER and of which this Court may take judicial notice.  A copy of the *Highpoint* Litigation
docket is annexed as Exhibit 2 to the Sternberg Declaration.  For the Court's ease of reference,
highly relevant filings are also annexed to the Sternberg Declaration.

On or about February 1, 2017, the *Highpoint* defendants issued subpoenas on certain non-party banks seeking account information related to the Wood related defendants.  On February 21, 2017, Wood, together with the plaintiffs and other third-party defendants, filed a motion to quash the non-party subpoenas on the basis that the litigation involved very discrete issues. (Sternberg Decl., Exh 3.)  Wood emphasized that the parties' claims and defenses were "limited to specific insurance policies issued by or on behalf of Companion and the amounts collected and paid with respect thereto" (*Id.* at p. 2), specifically the PayGo Program, "the program in which Companion authorized Highpoint to serve as its agent with respect to certain "pay as you go" or "PayGo" workers' compensation and employer's liability insurance policies that were issued to third parties . . . and reinsured by Redwood Reinsurance SPC, Ltd.  (*Id.* at p. 4).  Wood contended that "each of Companion's Counterclaims and Third-Party claims concerns either the collection or payment of premium, collateral, or other insurance-related funds and/or the payment workers' compensation claims and related expenses with respect to Companion insurance policies."  (*Id.*)

Wood argued that bank and financial records maintained by non-parties had nothing to do with Companion's insurance policies or the parties' business dealings with Companion, noting that Wood "conducted business with countless companies and individuals over the years that have absolutely nothing to do with Companion or Companion's insurance policies."  Wood complained that "none of the requests in the Subpoenas is tied to either the PayGo Program, Plaintiffs' PayGo-related claims, Companion's Counterclaims and Third-Party Claims, or Companion's insurance policies."  (*Id.* at p. 5).  Again, Weber is mentioned nowhere in the papers supporting or opposing the motion.

**B.**    **The *Wood Delaware* Litigation**

On January 17, 2017, Wood (and co-plaintiff DNIC Insurance Holdings, Inc.) initiated

the *Wood Delaware* litigation by filing a complaint against twenty-three defendants, including

Weber.  This litigation centers on Wood's sale of two insurance companies he owned --

Redwood Reinsurance SPC, Ltd. ("Redwood") and Dallas National Insurance Company (n/k/a

Freestone Insurance Company ("Freestone") – to a company called Southport, which Wood

alleges was owned and controlled by Alexander Burns.  Wood alleges that each of the defendants

had some role in the ultimate insolvency of Redwood and Freestone, and the primary claim is

breach of fiduciary duty.  As to Weber, the underlying factual allegation is that he joined

Southport Re (an affiliate of the Southport entity that acquired Freestone and Redwood) in May

2012, after Wood had already entered into an agreement to sell Freestone and Redwood to

Southport.  Thus, as a basic premise, Weber was not even involved with Redwood for most of

the period at issue in the *Highpoint* Litigation.

On June 13, 2017, and prior to the issuance of the Subpoena to Weber in *Highpoint*,

Weber filed a motion to dismiss the *Wood Delaware* complaint, detailing, in part, the clear lack

of any allegation against Weber that constituted any breach of fiduciary duty.  On June 26, 2017,

less than two weeks after receipt of Weber's motion to dismiss, Wood (through same counsel

representing him in the *Highpoint* case) filed a First Amended Complaint ("FAC") that added a

number of "information and belief" allegations against Weber and other defendants.  (Sternberg

Decl., Exh. 5.)  As discussed in Weber's motion to dismiss (Sternberg Decl., Exh. 4), these

allegations sought to plead around the deficiencies raised in the original motion to dismiss in a

transparent effort to bolster the facially deficient original complaint.  At the core of the FAC,

Plaintiffs allege that a number of defendants, including Weber, conspired to orchestrate various

transactions that left Freestone and Redwood insolvent by taking cash from them and replacing the cash with illiquid or worthless assets. (Sternberg Decl., Exh. 5 at ¶¶ 45, 52-77.)

**C.     The Non-Party Subpoena Directed to Weber in the *Highpoint* Litigation**

On August 8, 2017, during the pendency of the *Wood Delaware* litigation, counsel for Wood sent counsel for Weber a subpoena seeking Weber's testimony only (no documents) on August 29, 2017.  (Sternberg Decl., ¶ 8.)    That subpoena was not served (or accepted for service) and thereafter counsel for Weber engaged counsel for Wood in a dialogue to attempt to convince him that Weber's deposition was neither needed nor warranted.  (Sternberg Decl., ¶ 9.) Counsel for Wood did not agree and on August 28, 2017, counsel for Wood requested that counsel for Weber accept service of a second amended subpoena ad testificandum seeking Weber's deposition testimony.  (Sternberg Decl., ¶ 10 and Exh. 6.)  Counsel for Weber represented that he would accept service of a subpoena for purposes of objecting to it and/or moving to quash it.  (Sternberg Decl., ¶ 12 and Exh. 6.)  The request did not indicate that the subpoena would also include a request for documents.  (Sternberg Decl., ¶ 11 and Exh. 6.) Nevertheless, on August 29, 2017, counsel for Wood delivered the Subpoena, which demands that Weber provide testimony and produce documents in New York, New York on September 12, 2017.  (Sternberg Decl., ¶ 13 and Exhs. 1, 6.)  That same day, Weber filed his motion to dismiss the FAC in the *Wood Delaware* litigation.  (Sternberg Decl., Exh. 4.)

On August 30, 2017, after objecting to the service of a subpoena that included document requests, counsel for Weber indicated that Weber would accept service of the Subpoena for purposes of objecting to it and that Weber would not be appearing on the noticed date of September 12, 2017.  (Sternberg Decl., ¶ 14 and Exh. 6.)  Counsel for Weber also requested that Wood provide a copy of the transcript of Wood's deposition in the *Highpoint* case because such testimony might be relevant to the Subpoena and Weber's objections thereto, particularly given

that there was no apparent involvement by Weber in the narrow transactions articulated by Wood

that are at the core of the *Highpoint* case.  Any testimony by Wood about Weber would assist in

framing the possible reasons for and scope of the requested testimony.  (Sternberg Decl., ¶ 15

and Exh. 6.)  On September 1, 2017, counsel for Wood responded that "the transcript is

confidential and subject to a protective order entered by the Court."  On the same day, counsel

for Weber wrote:

> I am sure there must be a mechanism in your protective order for sharing
> information with third parties.  Please let me know what that is so that we can
> evaluate it for purposes of getting a copy of the transcript of David Wood's
> deposition.  We believe the deposition is highly relevant to our objections.  I am
> happy to discuss that issue with you.

(Sternberg Decl., ¶ 17 and Exh. 6.)  Wood's counsel did not respond to that communication.

(Sternberg Decl., ¶ 18.)

## ARGUMENT

## THE COURT MUST QUASH THE SUBPOENA

### A.    The Subpoena Subjects Weber to Undue Burden and Was Served For an Improper Purpose

Pursuant to Federal Rule of Civil Procedure 45, the court "must quash or modify a

subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis

added); *see also Sanofi-Sythelabo v. Aptoex Inc.*, No. 02 Civ. 2255, 2009 WL 5247497, at *3

(S.D.N.Y. Dec. 30, 2009) ("Federal Rule of Civil Procedure 45[] provides that a court must

quash or modify a subpoena that subjects a person to undue burden.")  Discovery sought via a

subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under

Rule 26(b).  Rule 26(b)(1) limits discovery to "any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case, considering the importance of

the issues at stake in the action . . . the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Manolis v. Brecher*, No. 11 Civ. 2750, 2013 WL 4044808, at *3 (S.D.N.Y. Aug. 9, 2013).

Rule 26(b)(2)(C) requires a court to limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Moreover, Rule 26(c) states that a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). The undue burden standard entitles non-parties to special consideration and sensitivity regarding costs and inconvenience imposed by the subpoena. *See Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03-CV-1382, 2003 WL 23018833, *8 (S.D.N.Y. Dec. 23, 2003) (burden is on party issuing subpoena to demonstrate relevance).

When the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied. *See Nicholas v. Poughkeepsie Savings Bank*, No. 90 Civ. 1609, 1991 WL 113279 (S.D.N.Y. June 14, 1991) (citing *Oppenheimer Fund, Inc. v.* Sanders, 437 U.S. 340, 353 n. 17 (1978)); *Salvatorie Studios, International v. Mako's, Inc.*, No. 01 Civ. 4430, 2001 WL 913945 (S.D.N.Y. Aug. 14, 2001). The breadth of the documents requested, the motion practice and repleading in the *Wood Delaware* Litigation, and the timing of the issuance of the Subpoena demonstrates the untoward purpose for which Wood intends to use the Subpoena.

Exhibit 1 to the Subpoena demands Weber's production of the following documents with no limitation on date range other than where specified:

> Request No. 1: Audited and unaudited quarterly and annual financial statements for Redwood for 2012, 2013, and 2014, and any trial balances and supporting documentation relating thereto.
>
> Request No. 2: All communications with Aon relating to Redwood, Highpoint, Companion, or the Collateral.
>
> Request No. 3: All communications with Southport relating to Redwood, Highpoint, Companion, or the Collateral.
>
> Request No. 4: All communications with Companion relating to Redwood, Highpoint or the Collateral, including all communications relating to the Commutation Agreement and the assets and liabilities transferred or assigned pursuant thereto.
>
> Request No. 5: All documents relating to the negotiation and execution of the Program Agreement, the 2013 Quota Share Agreement, and the Commutation Agreement.
>
> Request No. 6: All documents relating to underwriting costs, fees, or expenses associated with the PayGo Policies.
>
> Request No. 7: All documents relating to expenses, losses, claims payments, or liabilities that were paid on behalf of Redwood with respect to PayGo Policies.
>
> Request No. 8: All communications with PricewaterhouseCoopers or any other audit or accounting firm relating to any audit of, or accounting for, Redwood, including all communications relating to Redwood's financial statements for 2012, 2013, and 2014.

The insolvency of Redwood is the subject of the *Wood Delaware* Litigation. In contrast, Wood already has framed the third-party claims against him in the *Highpoint* Litigation as being limited to collection or payment of premium, collateral, or other insurance-related funds and/or the payment workers' compensation claims and related expenses with respect to Companion insurance policies. Thus, requests for "all communications" concerning Redwood, financial statements for Redwood, and all communications concerning audits of and accounting for

Redwood demonstrate that the motivation behind the Subpoena is to obtain information for the *Wood Delaware* Litigation.

It is telling that Wood took no steps to depose Weber prior to the motion practice in the *Wood Delaware* Litigation, in which Wood's pleading inadequacies were exposed. Indeed, on January 3, 2017, the *Highpoint* court granted the parties' request to amend the original scheduling order and issued the First Amended Scheduling Order (*Highpoint* Doc. 99) resetting the discovery cutoff date to July 3, 2017. It was not until May 31, 2017 that Wood, the other third-party defendants, and plaintiffs moved to amend the scheduling order on the basis that "the parties have begun to issue subpoenas seeking to depose a number of third-party witnesses" and that "the parties have identified dozens of persons with relevant knowledge." (*Highpoint* Doc. 128, p. 3).[3]

Despite numerous opportunities, Wood has failed to make any showing of the relevance of Weber's testimony. The motion for continuance did not specifically identify Weber as one of the potential witnesses nor any basis on which Weber was identified as a person with relevant knowledge of the specific issues framed by Wood. Certainly, Wood's deposition in the *Highpoint* Litigation would further confirm Wood's views on the relevant issues of the *Highpoint* Litigation and clarify or refute Wood's position that Weber is a necessary witness. But despite due request, Wood's counsel has expressly declined to provide any information concerning Wood's deposition testimony in the *Highpoint* Litigation.

**B.      Wood Failed to Comply With Rule 45's Requirement To Tender Witness Fees**

Rule 45(b)(1) requires the serving party to remit a mandatory witness fee in connection with service: "Serving a subpoena requires delivering a copy to the named person and, if the

---

[3] The new discovery cutoff date is September 15, 2017. (*Highpoint* Doc. 139.)

subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1).  Wood has failed to tender the required witness fee.  (Sternberg Decl. ¶ 20).  Failure to tender the witness fee simultaneously renders the subpoena invalid and unenforceable.  *See Bristol Heights Associates, LLC. v. Chicago Title Ins. Co.*, No. 3:12cv01658, 2013 WL 1342288 (D. Conn. Apr. 2, 2013); *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250 (S.D.N.Y. 2000) (eliminating request for testimony as remedy for party's failure to tender witness fees with subpoena).  Accordingly, the Court should quash the Subpoena on this independent basis alone.

## **CONCLUSION**

Based on the foregoing, Movant respectfully requests that the Court grant the motion to quash and grant such other and further relief as may be just and proper.


Dated:   New York, New York
         September 11, 2017

                                        Respectfully submitted,

                                        HOLLAND & KNIGHT LLP

                                        By: _____
                                        Marc L. Antonecchia
                                        31 West 52nd Street
                                        New York, NY  10019
                                        (212) 513-3200
                                        marc.antonecchia@hklaw.com

                                        Jeremy Sternberg (*pro hac vice to be submitted*)
                                        10 St. James Avenue
                                        Boston, MA 02116
                                        (617) 523-2700
                                        jeremy.sternberg@hklaw.com

                                        *Attorneys for Movant Glenn Weber*